**Leonard W. Melburg, Appellee, v. Clifford Dakin et al., Appellants.**

**Gen. No. 10,306.**

Opinion
filed March 14, 1949.   Rehearing denied May 3, 1949.   Released for publication May 4, 1949.

SCHMIEDESKAMP & DEEGE, of Quincy, and STUART, NEAGLE & WEST, of Galesburg, for appellants.

RYAN & BOUR, SAFFORD, KRITZER & FULTON, RICHARD P. LAMOREAUX, HENRY R. SMITH, and LEONARD W. MELBURG, *pro se,* all of Monmouth, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

On October 17, 1947, the plaintiff caused to be served upon the defendants a written notice to the effect that he had elected to terminate their lease to a certain described tract of farm land in Warren county and notified each defendant to quit and deliver up possession thereon on March 1, 1948.  Defendants did not comply with this notice and on March 9, 1948, the plaintiff filed the instant complaint under the Forcible Entry and Detainer Act [Ill. Rev. Stat. 1947, ch. 57, par. 1 *et seq.;* Jones Ill. Stats. Ann. 109.263 *et seq.*] demanding judgment for possession of said premises.

On March 24, 1948, the plaintiff filed his motion and supporting affidavit for summary judgment.  On April 5, 1948, the answer to the complaint and an affidavit in defense of the motion for summary judgment were filed by defendants.  A reply to the answer was filed together with counter affidavits and an amended supplemental affidavit of the plaintiff.  Upon a hearing the motion of the plaintiff for a summary judgment was sustained and judgment was rendered awarding

the possession of the premises to the plaintiff and directing that a writ of restitution issue. To reverse this judgment defendants appeal.

The affidavit of Clifford Dakin, one of the defendants, filed in defense of plaintiff's motion for a summary judgment stated that the defendants have a good defense on the merits to all of the plaintiff's claim; that defendants, as tenants of the plaintiff have occupied the premises involved in this proceeding under an original verbal lease for more than two years whereby the plaintiff furnished the land and the defendants all labor and machinery for farming operations; that the plaintiff received as rent one half of all crops grown thereon and, in addition thereto, an annual rental of $5 per acre for pasture and lots; that as part of said agreement, all seed for crops grown, except oats, was paid one half by the plaintiff and one half by the defendants; that during the first week in August 1947, affiant called at the office of the plaintiff and plaintiff stated to him that he desired to go into partnership with affiant and his brother in the farming of the premises involved herein; that affiant stated to the plaintiff that defendants would not agree to enter into any partnership agreement but that the defendants desired to continue as tenants of the plaintiff the same as in previous years; that plaintiff then stated to affiant that if defendants would not enter into a partnership agreement that defendants could go ahead just as they had been as tenants in the past, for the farm year beginning March 1, 1948 and ending on February 28, 1949; that affiant accepted the offer of the plaintiff to lease said farm to the defendants for the farm year beginning March 1, 1948 on said terms; that on August 10, 1947, plaintiff called at the premises and discussed with affiant the farming operations for the term beginning March 1, 1948, and directed affiant to plow a twenty acre tract of sweet clover; that on September 27, 1947, affiant did so; that several days

after August 10, 1947, plaintiff again called at the premises and told affiant to go ahead and purchase seed corn, seed oats and clover seed for the farming of said premises for the term beginning March 1, 1948; that in pursuance thereof affiant purchased four bushels of clover seed on August 28, 1947, twelve bushels of seed corn on September 9, 1947 and fifty-two bushels of seed oats on October 2, 1947, for the purpose of sowing said seed on the premises during the farm term beginning March 1, 1948; that relying upon the lease with the plaintiff for the farm year beginning March 1, 1948, affiant purchased approximately ten bushels of seed wheat and planted ten acres of said premises in wheat on October 8, 1947; that affiant also fall plowed an eighteen acre tract of said premises on October 6, 1947 and fall plowed thirty acres of Mammoth clover during the month of November 1947; that in September 1947, affiant called at the office of the plaintiff in regard to repairing the kitchen and plaintiff agreed to have the kitchen repaired for the convenience of defendants and defendants hauled materials therefor from Monmouth, Macomb and La Harpe, Illinois and defendants assisted in making the repairs; that during the month of August 1947, the plaintiff authorized the defendants to purchase fifty steel posts and construct a temporary fence; that defendants bought the posts and constructed sixty rods of temporary fence; that two of the defendants, believing they had the premises which they occupied leased for the term beginning March 1, 1948, leased on September 6, 1947 to Charles Smith, their two hundred acre farm located in the vicinity of Monmouth for the farm year beginning March 1, 1948 and ending February 28, 1949; that affiants would not have done so if they had been unable to obtain a lease from the plaintiff for the same farm year.

A counter affidavit of the plaintiff in support of his motion for summary judgment was filed in which the

plaintiff stated that "he did not during the first week in August 1947 or at any time tell the defendants or any of them, that they could lease said premises for the farm year commencing March 1, 1948." In this affidavit plaintiff denied many of the averments contained in the affidavit of Clifford Dakin, explained others and stated he first learned that any wheat had been sown on the premises on March 23, 1948. In this affidavit plaintiff gave his version of various conversations which he had with Clifford Dakin and incorporated therein a letter he had written and sent to him by registered mail on October 7, 1947.

The trial court held that the allegations of the affidavit filed on behalf of the defendants in opposition to plaintiff's motion for summary judgment constituted an equitable as distinguished from a legal defense; that the instant proceeding is an action at law in forcible detainer and that the defense of part performance is not available to the defendants to obviate the effect of the statute of frauds. The conclusion of the trial court was that if a defendant was permitted in a law action to set up an equitable defense in his resistance to a motion for summary judgment the result would be to completely nullify the summary judgment provisions of our Civil Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 125 *et seq.;* Jones Ill. Stats. Ann. 104.001 *et seq.*].

*Northern Trust Co. v. Watson,* 310 Ill. App. 263, was a forcible entry and detainer proceeding in which the plaintiffs sought to recover possession of a farm located in the southern part of Cook county. It appeared in that case that a written lease had been executed in February 1938, the terms of the lease being from March 1, 1938 to March 1, 1939. The tenant held over beyond the term of the lease under a verbal agreement and on August 18, 1939 another verbal agreement for operating the farm for the crop year 1940 and ending March 1, 1941 was entered into. Pursuant

to that oral agreement the tenant did his fall plowing, sowed winter wheat and put in fertilizer at considerable expense getting ready for the following season. On December 7, 1939, a letter was sent to the tenant advising him that the lease would not be further extended and notifying him to surrender possession of the premises on or before March 1, 1940. Failing to do so suit was instituted before a justice of the peace and then appealed to the circuit court resulting in a verdict in favor of the defendant. The trial court rendered judgment notwithstanding the verdict in favor of the plaintiffs and the defendant appealed. In reference to the verbal agreement of August 18, 1939 for operating the farm for the crop year 1940, ending March 1, 1941, the court said: "It is further claimed that the agreement was contrary to the statute of frauds because it related to real estate and the period was for over a year. The answer to this is that there was part performance of this agreement by defendant having planted seventy acres of winter wheat to mature the succeeding year, hauling two hundred loads of manure and having done fifty acres of fall plowing. The mere fact that this verbal agreement was entered into on August 18, 1939 to begin March 1, 1940 and to continue until March 1, 1941, does not invalidate the oral lease as being contrary to the statute of frauds. In the case of *Anderson v. Collinson,* 300 Illl. App. 22 the court at page 26 said: 'Plowing and sowing small grain was enough to justify the conclusions reached by the court, that the part performance was sufficient to avoid and bar the statutes . . . . In this case it is undisputed that the plaintiff, in the fall of 1937, purchased rye for seeding and sowed fifteen acres on the leased premises and that he plowed twenty acres. These facts tend to support his contention there was a verbal agreement to lease the farm for the ensuing year and this work was done as part performance of the contract.' " In a special concurring opinion Mr.

Justice BURKE said: "I agree with the opinion of the court that the question of fact was presented which was properly submitted to the jury and that the trial judge was in error in entering a judgment for the defendant and against the plaintiff notwithstanding the verdict. In my opinion the court should have entered judgment on the verdict. The agreement which defendant asserted was entered in to, that he be allowed possession of the land until March 1, 1941, was not in writing, nor was any memorandum thereof reduced to writing and signed by the party to be charged therewith. The lease according to the defendant, was to continue a year and to commence some months in the future. Under the oral agreement for the extension of the tenancy until March 1, 1941, defendant planted 70 acres in winter wheat, hauled 200 loads of manure and did 50 acres of fall plowing. This clearly was a part performance. If the tenancy which he contends was agreed upon is not recognized, then he will suffer the loss of the crops planted and all the fruits of his labors. Plaintiff contends, however, that in an action at law, part performance of a contract made in violation of the statute of frauds, does not take the contract out of the statute and will not operate as an estoppel, but a party wishing to avail himself of such contention must have recourse to an action in equity. In 1874, the statute of Forcible Entry and Detainer was amended so as to provide in the fourth clause thereof that the person entitled to the possession of lands or tenements may be restored thereto in the manner provided. 'When any lessee of the lands or tenements, or any person holding under him, holds possession without right after the termination of the lease or tenancy by its own limitation, condition or terms, or by notice to quit or otherwise.' (Sec. 2, Ch. 57, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 109.264]). Previous to the amendment of 1874, the statute did not contain the

words 'without right.' The words 'without right' clearly mean without legal or equitable right. Hence, if a person in possession has a right to retain possession, whether legal or equitable, he may successfully assert such right. Since the 1874 amendment it has not been necessary for a defendant to go into equity in order to establish an equitable defense. When a plaintiff seeks possession under the Forcible Entry and Detainer statute, the tenant may assert his equitable defense at law. (*Holt v. Nixon,* 141 Fed. 952; *Fuchs v. Peterson,* 315 Ill. 370; *Coyne v. South Shore De Luxe Laundry,* 299 Ill. App. 275.)''

In 22 Am. Jur. Sec. 41 of the article on Forcible Entry and Detainer at page 939 it is said: ''Although there is authority to the contrary, under some statutes, the defenses interposed may be equitable as well as legal and there is authority to the effect that all defenses, both legal and equitable, may be made, under a plea of not guilty in a forcible entry and detainer proceeding.'' The text cites *Farmer v. Pitts,* 108 Neb. 9, 187 N. W. 95, 24 A. L. R. 719 and *Paducah Home Oil Co. v. Paxton,* 222 Ky. 778, 2 S. W. (2d) 650, 56 A. L. R. 797. In the Nebraska case the court says: ''Under the plea of not guilty or under an answer of general denial in cases of forcible entry and detainer brought by a landlord against a tenant, the tenant is entitled to all the defenses, whether of law or equity, which are warranted by the evidence.'' In its opinion in the Kentucky case it is stated: ''While the former practice was different, the later opinions hold that on a plea of not guilty in a forcible detainer proceeding all defenses both legal and equitable may be made.'' Under the foregoing authorities and the applicable provisions of our Practice Act the trial court erred in its conclusion that the defense of part performance was not available to the defendants in this proceeding.

■■ The trial court did not err in permitting the sheriff to amend his return upon the summons to show that he served the defendant therein named, Betty Dakin. The original return was that he had served Mrs. John M. Dakin, the affidavit in support of the motion disclosing, however, that Betty Dakin and Mrs. John M. Dakin were one and the same person. Nor is there any merit in the contention of appellants that the trial court erred in permitting appellees to file additional affidavits, nor is there any merit in their contention that the action was improperly brought in the name of appellee.

In *Diversey Liquidating Corp. v. Neunkirchen,* 370 Ill. 523 at page 527, it is said: "The purpose of a proceeding for summary judgment is to determine whether a defense exists. Where a defense raising an issue of fact as to plaintiff's right to recover is set up, a summary judgment must be denied. To try an issue of fact by affidavits would deprive defendant of his right to a jury trial."

■ In the instant case an issue of fact was presented by the affidavits in support of and in opposition to the motion of the plaintiff for summary judgment which is cognizable in an action of this kind. The trial court erred in sustaining the motion of the plaintiff for summary judgment and in rendering judgment in favor of the plaintiff. That judgment is therefore reversed and the cause is remanded to the circuit court of Warren county with directions to overrule the motion of the plaintiff for summary judgment.

*Reversed and remanded with directions.*